GARY M. RESTAINO
United States Attorney
District of Arizona
Vincent J. Sottosanti
Jonathan B. Granoff
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: vincent.sottosanti@usdoj.gov
       jonathan.granoff@usdoj.gov
Attorneys for Plaintiff

FILED

2023 DEC 14  PM 1: 14

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

CR-23-02258-TUC-JGZ(MAA)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

SEALED

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>              vs.<br><br>Kevin L. McKenzie,<br>(Counts 1-29, 31-34, 36-40)<br><br>Corina L. Martinez,<br>(Counts 1, 5-7, 13-17, 21-25, 27, 30, 32-33,<br>35, 37)<br><br>Defendants. | **I N D I C T M E N T**<br><br>Violation:<br><br>18 U.S.C. § 371<br>(Conspiracy to Commit an Offense against the United States:<br>Embezzlement from an Indian Tribal Organization)<br>**Count 1**<br><br>18 U.S.C. § 1163<br>(Embezzlement<br>from an Indian Tribal Organization)<br>**Counts 2-7**<br><br>18 U.S.C. § 666<br>(Theft and Embezzlement Concerning Programs Receiving Federal Funds)<br>**Counts 8-17**<br><br>18 U.S.C. § 1343<br>(Wire Fraud)<br>**Counts 18-23**<br><br>18 U.S.C. § 1349<br>(Conspiracy to Commit Wire Fraud)<br>**Count 24**<br><br>18 U.S.C. § 1956(h)<br>(Conspiracy to Commit Money Laundering)<br>**Count 25** |

18 U.S.C. § 1957
(Engaging in Monetary Transactions
in Property Derived from Specified
Unlawful Activity)
**Counts 26-39**

18 U.S.C. § 1512(b)(1)
(Attempted Tampering with a
Witness)
**Count 40**

18 U.S.C. §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 21 U.S.C. § 853(p), 28
U.S.C. § 2461(c)
**Forfeiture Allegation**

## THE GRAND JURY CHARGES:

### I.      Introductory Allegations:

At all times material to this Indictment:

1.      Kevin L. McKenzie ("McKenzie") was the Chief Executive Officer ("CEO") of Apache Behavioral Health Services, Inc. ("ABHS"). McKenzie held the CEO position since at least May 25, 2016, when he was appointed Interim CEO by the ABHS Board of Directors. McKenzie was appointed CEO on October 7, 2016. Prior to his appointment as CEO, McKenzie served as the Chief Operating Officer ("COO") for ABHS from approximately September 2015 until his appointment as the Interim CEO in 2016. As COO and CEO of ABHS, McKenzie had a fiduciary duty to ABHS and owed a duty of loyalty to ABHS, free from deceit, self-enrichment, concealment, and conflict between his personal interests and the interests of ABHS. McKenzie lives in Tucson, Arizona.

2.      Corina L. Martinez ("Martinez") is the sister of McKenzie's long-time significant other, identified in this Indictment as Individual B, with whom McKenzie has three children. Martinez was the sole member/manager, director, and CEO of Evolved Healthcare Inc. ("EHI"). Martinez lives in Tucson, Arizona.

3.      ABHS is a non-profit Indian tribal organization and tribal healthcare provider located on the Fort Apache Indian Reservation in Arizona. ABHS is chartered by the White

1   Mountain Apache Tribe for the purpose of providing behavioral health services to residents
2   of the Fort Apache Indian Reservation and members of the White Mountain Apache Tribe.
3   ABHS has a Board of Directors to oversee its operations.  The members of the Board are
4   appointed by the White Mountain Apache Tribal Council.  As part of its duties, the ABHS
5   Board of Directors approves the salary of the ABHS CEO.  According to ABHS's current
6   website, "[t]he mission of ABHS is to improve the quality of life for individuals and
7   families who are residing on the Fort Apache Indian Reservation and enrolled members of
8   the White Mountain Apache Tribe."

9       4.      Helping Everyday Youth ("HEDY") is a corporation that began as a youth
10  focused behavioral health provider which, prior to 2016, provided counseling at schools on
11  the Fort Apache Indian Reservation.  HEDY was incorporated in Arizona on January 26,
12  2012.  At the time, McKenzie was listed as the Statutory Agent and another individual
13  (hereinafter "Individual A") was a member and manager. On October 3, 2014, HEDY
14  added McKenzie's company, D2K Enterprises ("D2K"), as a manager and member.
15  McKenzie remained the statutory agent for HEDY until January 3, 2019. From at least
16  2014, McKenzie and Individual A had signature authority on the HEDY Wells Fargo bank
17  account (account ending in 0509), until McKenzie was removed from the account on
18  March 21, 2017.

19      5.      Evolved Healthcare, Inc. ("EHI") was incorporated in Arizona by Martinez
20  on December 28, 2017. Martinez is the sole member/manager and CEO.

21      6.      Evolved LLC was incorporated in Arizona on January 26, 2012, by E.B. and
22  D.S. On October 12, 2017, Martinez was added as a manager/member and obtained a 98%
23  ownership interest.

24      7.      D2K was incorporated on October 24, 2014, in North Carolina. Kevin
25  McKenzie was the CEO and sole manager/member. McKenzie and Martinez were
26  authorized signers on at least one of the D2K bank accounts until January 8, 2019, when
27  Martinez was removed.

28

**II.    Scheme to Defraud, Attempted Tampering of a Witness, and Attempted Concealment of Fraud and Embezzlement Scheme from ABHS Board of Directors:**

**The HEDY/ABHS Amended "Contracts"**

8.      On August 1, 2013, HEDY entered a Professional Services Contract with ABHS whereby HEDY employees would provide counseling services for ABHS's patients. On September 15, 2015, ABHS and HEDY amended the Professional Services Contract. This amended contract was used by McKenzie as a fraudulent front to further a scheme to embezzle from and defraud ABHS to the detriment of the White Mountain Apache Tribe. The amended contract was signed by Individual A for HEDY and McKenzie's predecessor, S.G., who at the time was the CEO of ABHS. Under the terms of the amended contract, ABHS hired all HEDY employees and ABHS agreed to "continue compensating HEDY at 50% of collections for monthly services billed by former HEDY employees" reduced by the salaries and benefits paid by ABHS to the former HEDY employees. Under this amended contract, ABHS also agreed to hire McKenzie as the COO for 20 hours a week with a salary of $65,000 per year. As the COO of ABHS, McKenzie had a fiduciary duty and a relationship of trust to act in the best interests of ABHS. However, McKenzie fraudulently and willfully, embezzled, failed to disclose, and concealed from ABHS and S.G. that McKenzie would receive portions of ABHS funds from HEDY after such funds had been transferred from ABHS consistent with the terms of the Professional Services Contract. McKenzie concealed from ABHS this back door financial arrangement McKenzie had with HEDY and Individual A. S.G. would never have entered the ABHS agreement with HEDY had S.G. known McKenzie would receive ABHS's money after it had passed through HEDY.

9.      On May 26, 2016, the ABHS Board of Directors removed S.G. from the ABHS CEO position and appointed McKenzie as Interim CEO. On September 1, 2016, while Interim CEO for ABHS, McKenzie and HEDY further amended the Professional Services Contract between HEDY and ABHS. As the Interim CEO and later CEO for ABHS, McKenzie had a fiduciary duty and relationship of trust to act in the best interests

1   of ABHS. However, McKenzie again used this September 1, 2016 amended contract as a
2   fraudulent front to further his embezzlement scheme against ABHS to the detriment of the
3   White Mountain Apache Tribe. McKenzie further continued to conceal his backdoor
4   financial agreement with HEDY. This 2016 amendment changed the term of the contract
5   to fifty years and stated, "ABHS will continue compensating HEDY at 50% of collection
6   for monthly services billed." This contract amended the previous contract for the financial
7   benefit of McKenzie and to the detriment of ABHS and the White Mountain Apache Tribe.
8   This amended contract indicated that "ABHS will be responsible for paying all salaries and
9   benefits of HEDY employees that were relinquished to ABHS." Under this new
10  amendment, HEDY received half of ABHS's AHCCCS income from all ABHS employees
11  working in ABHS's STEM-SEL (Scientific Technology Engineer Mathematics and Social
12  Emotional Learning) services programs – thus, expanding HEDY's pool of employees for
13  which it was reimbursed. Under this amended contract, McKenzie also transferred the
14  expense/burden for compensating former HEDY employees from HEDY to ABHS. This
15  change resulted in HEDY receiving significantly more money each year under the contract.
16  McKenzie further fraudulently concealed from the ABHS Board of Directors that he had
17  increased the amount of fraudulent proceeds he obtained through the backdoor financial
18  agreement he had with HEDY.

19          10.     From approximately 2015 through March 2023, ABHS transferred over $35
20  million to HEDY's Wells Fargo account (account ending in 0509) under the guise of the
21  Professional Services Contracts. During these years, approximately 92% of HEDY's net
22  deposits originated from ABHS. During this same approximate timeframe, HEDY
23  transferred over $15 million to Individual A and his companies. HEDY also transferred
24  over $14 million to McKenzie's D2K company, and $528,000 to McKenzie personally. Of
25  this $14 million, over $12 million was paid to either McKenzie or D2K via checks endorsed
26  by Individual A.

27          11.     HEDY has not performed any contracting work for ABHS since the
28  relinquishment of HEDY employees to ABHS in 2015.

1        12.    During this timeframe, the ABHS Board of Directors had no knowledge that

2 McKenzie received ABHS funds through HEDY. McKenzie, in furtherance of his

3 embezzlement scheme, fraudulently and willfully concealed from ABHS this backdoor

4 financial relationship that, McKenzie, HEDY, and Individual A had with each other.

5 McKenzie fraudulently concealed from ABHS the true nature of the amended "professional

6 services contracts" and that such contracts were used as a front by McKenzie to embezzle,

7 defraud, and funnel money from ABHS for the unjust and unlawful personal enrichment

8 of McKenzie and Individual A.

9        13.    From approximately 2015 through April 2023, McKenzie's company D2K,

10 received over $14 million from HEDY which represents approximately 98% of D2K's

11 "income." The other sources of "revenue" for D2K were a single transfer of approximately

12 $150,000 from Martinez in 2018; two PPP loans in 2020 and 2021 for $15,500 and $15,542

13 respectively; and other smaller dollar transfers. McKenzie used D2K funds almost

14 exclusively to pay personal expenses and family members. McKenzie also transferred such

15 funds to other businesses he owned and to his personal bank account. There is no evidence

16 that D2K has ever performed any legitimate services for HEDY or ABHS. McKenzie used

17 D2K as a shell company to provide a front to justify the transfers of funds from HEDY to

18 D2K.

19      **Attempted Tampering of a Witness by Defendant McKenzie:**

20        14.    On or about March 17, 2023, a grand jury subpoena was served on ABHS to

21 obtain information relating to this investigation. On April 3, 2023, ABHS was notified of

22 a list of ABHS employee files needed for the investigation. ABHS was also notified that

23 the investigators desired to interview the current and previous ABHS Board chairs.

24 Included in the list of ABHS former employees whose files were requested for the

25 investigation was the former CEO of ABHS, S.G.

26        15.    On April 16, 2023, while at a family gathering, McKenzie called S.G. on

27 the phone. During that conversation, McKenzie falsely stated that he used his daughter's

28 phone to make the phone call. McKenzie actually used a phone belonging to a relative of

1    his significant other. During McKenzie's conversation with S.G., McKenzie corruptly
2    attempted to influence and persuade S.G. to lie to investigators. With the corrupt intent to
3    influence the testimony of S.G., McKenzie attempted to persuade S.G. to provide false
4    information to investigators, including that McKenzie had revealed his financial interest in
5    HEDY to S.G. before S.G. signed the September 2015 ABHS/HEDY contract. McKenzie
6    attempted to persuade S.G. to provide such false information when, in fact, McKenzie
7    knew he never actually revealed his financial interest in HEDY to S.G. before S.G. signed
8    the contract. With the corrupt intent to influence the testimony of S.G., during this same
9    phone conversation, McKenzie further attempted to persuade S.G. to tell authorities that
10   S.G. had not spoken to McKenzie for a long time when, in fact, McKenzie knew that such
11   statement was false.

12                                **ABHS/Evolved  LLC "Contracts"**

13           16.     On October 17, 2017, ABHS and Evolved LLC, entered a professional
14   services contract. The contract was signed by McKenzie as the CEO of ABHS and
15   Martinez as the representative for Evolved LLC. As the CEO of ABHS, McKenzie had a
16   fiduciary duty and special relationship of trust to act in the best interests of ABHS.
17   Martinez knew that McKenzie had such fiduciary duty. The ABHS/Evolved LLC contract
18   was phony; it was used as a fraudulent front by McKenzie and Martinez to further their
19   fraud and embezzlement scheme against ABHS to the detriment of the White Mountain
20   Apache Tribe. Under the terms of the contract, ABHS would notify Evolved LLC of
21   ABHS's staffing needs and Evolved LLC would "refer qualified employees of" Evolved
22   LLC to ABHS. Those Evolved LLC employees would then be employed by ABHS to
23   perform behavioral health services. Under the contract, ABHS agreed to pay Evolved LLC,
24   a "Placement Fee" equal to 50% of the monthly services billed to AHCCCS that had been
25   performed by the "referred" employees. ABHS and Evolved LLC also agreed to split the
26   personnel costs. This contract expired October 17, 2020. Prior to its expiration, in
27   September 2020, McKenzie and Martinez, on behalf of ABHS and Evolved LLC, signed
28

1   an additional phony Professional Services Contract that continued to operate under similar
2   terms.

3       17.   From 2017 through the present date, the investigation has failed to reveal any
4   ABHS employees who had been referred by Evolved LLC or EHI to ABHS consistent with
5   the terms of the professional services contracts. The investigation did reveal at least five
6   ABHS employees placed on EHI's payroll. These individuals have described payments
7   received from EHI as "bonuses." These EHI "employees" were paid these funds in
8   furtherance of McKenzie and Martinez's scheme to make it appear that these five
9   "employees" were contracted and referred to ABHS by EHI when, in fact, the individuals
10  were employed by ABHS.

11      18.   Since at least 2018, neither EHI nor Evolved LLC has performed any
12  contracting work for ABHS.

13      19.   Martinez and McKenzie fraudulently concealed from ABHS the true nature
14  of the phony referral "professional services contracts" and that such contracts were merely
15  used as a front by Martinez and McKenzie to embezzle, defraud, and funnel money from
16  ABHS for the unjust and unlawful personal enrichment of McKenzie and Martinez. The
17  fraudulent contracts caused individuals in the ABHS management, to believe that Evolved
18  LLC was compensated under the contracts for providing counseling services for ABHS
19  patients.

20      20.   From approximately 2018 through April 2023, ABHS transferred
21  approximately $15 million to EHI under the guise of the phony professional services
22  contracts between ABHS and Evolved LLC. During this timeframe, approximately 99% of
23  EHI's revenue originated from ABHS. From this money, Martinez transferred over $11
24  million to her personal bank accounts. In 2018, from her personal bank account, Martinez
25  made a $107,000 transfer to McKenzie's personal account and a $150,000 transfer to
26  McKenzie's D2K bank account.

27      21.   On November 6, 2018, Martinez transferred $1,000,000 in funds derived
28  from the scheme from EHI to her personal bank account. On January 4, 2019, Martinez

1   used those funds to purchase a cashier's check for approximately $952,000. The cashier's
2   check was used to purchase a home located at 1567 N Saguaro Cliffs Court, Tucson,
3   Arizona. Individual B, who is Martinez's sister and McKenzie's significant other and the
4   children Individual B shares with McKenzie lived in the Saguaro Cliffs house. Individual
5   B's driver's license and car were registered to a different home (2974 Open Range Way,
6   Tucson, AZ) owned by McKenzie. McKenzie also, at times, lived in the Saguaro Cliffs
7   house. Furthermore, McKenzie routinely paid for maintenance for the Saguaro Cliffs
8   home, and, as early as January 30, 2019, the Saguaro Cliffs address was listed on a Ship N
9   Mail Xpress PO Box application as his address. While, at times, McKenzie also resided at
10  a separate Tucson residence (the Open Range Way address), his driver's license and
11  vehicle registration identified the Saguaro Cliffs house as his residence. On March 17,
12  2023, Martinez was served with a grand jury subpoena related to this matter. Six days later,
13  on March 24, 2023, the Saguaro Cliffs house was transferred via quitclaim deed to
14  Martinez's son. Then, on March 30, 2023 McKenzie changed the address associated with
15  his driver's license to the Open Range Way address.

16   ## McKenzie's Attempted Concealment of the Fraud and Embezzlement Scheme Using the ABHS Board of Directors
17

18   22.    On October 11, 2023, with knowledge that he was under criminal
19  investigation, McKenzie met with the ABHS Board of Directors. During this meeting,
20  McKenzie attempted to absolve himself of criminal wrongdoing. While concealing his
21  fraud and embezzlement scheme, McKenzie presented limited information about his
22  financial interest with HEDY, his connection with Evolved, and urged the Board to
23  conclude he had done nothing wrong. For the first time, McKenzie disclosed to the Board
24  his financial relationship with HEDY. During this meeting McKenzie willfully and
25  fraudulently, concealed and omitted numerous material facts to include the following:
26  McKenzie concealed the true nature of the backdoor financial agreement McKenzie had
27  with HEDY; McKenzie failed to disclose that he had received from HEDY over $14
28  million dollars above his stated salary as CEO for ABHS; McKenzie concealed the true

1  nature of the HEDY/Evolved phony referral contracts and his backdoor financial
2  arrangement with Martinez where she fraudulently diverted millions of dollars of ABHS
3  funds to McKenzie; McKenzie failed to disclose that Martinez had purchased McKenzie's
4  family almost a $1 million dollar home; McKenzie also concealed from the Board that
5  Martinez paid at least $800,000 of his personal credit bills; McKenzie further failed to
6  disclose that Martinez purchased for him a high-end luxury vehicle: a 2013 Rolls Royce
7  Ghost for which Martinez paid approximately $128,000.

8        23.    On October 13, 2023, without full knowledge of the facts relating to
9  McKenzie and Martinez's embezzlement and fraud scheme against ABHS and the White
10 Mountain Apache Tribe, the ABHS Board of Directors passed a resolution approving
11 McKenzie's partial ownership in HEDY and concluded that McKenzie had done nothing
12 wrong. Had McKenzie apprised the ABHS Board of Directors of the true nature of his
13 fraudulent activities, the Board would not have adopted this resolution.

14                              **COUNT 1**
15 **Conspiracy to Commit an Offense Against the United States: Embezzlement from**
                              **an Indian Tribal Organization**
16                           **[18 U.S.C. § 371]**

17       24.    The factual allegations alleged in paragraphs 1-23 above are re-alleged and
18 incorporated below.

19       25.    From a time unknown, but at least from on or about October, 2017, and
20 continuing thereafter through at least April, 2023, in the District of Arizona, and elsewhere,
21 the defendants, Kevin McKenzie and Corina Martinez, knowingly and intentionally
22 combined, conspired, and agreed with each other, to commit an offense against the United
23 States, that is, to knowingly and willfully embezzle, steal, and convert to his and her own
24 use without authority, and willfully permitted to be misapplied moneys and funds in an
25 amount greater than $1000 belonging to an Indian tribal organization and entrusted to the
26 care and custody and control of any officer, employee, and agent of an Indian tribal
27 organization, in violation of Title 18, U.S.C. § 1163.

28

26.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Arizona and elsewhere:

a. On October 17, 2017, and September 17, 2020, ABHS and Evolved LLC, entered into phony "referral" professional services contracts. These contracts were used by McKenzie and Martinez as a fraudulent front to embezzle and defraud ABHS to the detriment of the White Mountain Apache Tribe as described in paragraphs 16-21 of this Indictment.

b. Since at least 2017 through on or about March 2023, Behavioral Health Technicians ("BHT") in the ABHS LWP program were paid by EHI a nominal sum described by the BHTs as a "bonus." This bonus payment structure was used as a front by McKenzie and Martinez to make it appear that EHI employees were contracted and referred to ABHS when, in fact, the BHTs were ABHS employees.

c. From 2018 through at least March 2023, under the guise of the phony "referral" contracts, ABHS transferred approximately $15 million to EHI (not the contracted company Evolved LLC which has not received any ABHS funds). Portions of these fraudulent proceeds were shared amongst Martinez and McKenzie.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-7
### Embezzlement from an Indian Tribal Organization
### [18 U.S.C. § 1163]

27.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

28.     On the dates set forth below, in the District of Arizona, the defendants, Kevin McKenzie, and Corina Martinez, knowingly and willfully embezzled, stole, and knowingly

1 | converted to his and her own use without authority, and with the intent to convert to their
2 | own use, did knowingly retain over $1000 of the monies and funds knowing the funds to
3 | have been misapplied to their accounts such monies and funds belonging to an Indian tribal
4 | organization as reflected in each count below:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 2 | McKenzie | 9/11/2019 | $ 1,292,822.50 | ABHS ACH transfer to HEDY |
| 3 | McKenzie | 5/18/2022 | $ 659,958.50 | ABHS ACH transfer to HEDY |
| 4 | McKenzie | 2/14/2023 | $ 248,640.00 | ABHS ACH transfer to HEDY |
| 5 | McKenzie Martinez | 9/11/2019 | $ 1,207,474.08 | ABHS ACH transfer to EHI |
| 6 | McKenzie Martinez | 5/18/2022 | $ 349,986.77 | ABHS ACH transfer to EHI |
| 7 | McKenzie Martinez | 2/14/2023 | $ 111,895.37 | ABHS ACH transfer to EHI |

All in violation of Title 18, United States Code, Section 1163.

## COUNTS 8 – 12
### Theft and Embezzlement Concerning Programs Receiving Federal Funds
### [18 U.S.C. § 666]

29.    The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

30.    On the dates set forth below, in the District of Arizona, the defendant, Kevin McKenzie, being an agent of an organization, to wit: ABHS, said organization receiving in the one year period beginning and ending as set forth below as to each count, benefits in excess of $10,000 under a Federal program involving a grant, contract, and other form of Federal assistance, the defendant stole, embezzled, obtained by fraud, and without authority knowingly converted to the use of a person not the rightful owner, property worth at least $5,000 and owned and under the care, custody, and control of such organization, ABHS, in the amounts set forth below as to each count:

| Count | Calendar Year | Money Embezzled/Obtained Through Fraud |
|---|---|---|
| 8 | 01/01/18 – 12/31/18 | $6,290,435 |
| 9 | 01/01/19 – 12/31/19 | $5,688,342 |
| 10 | 01/01/20 – 12/31/20 | $3,397,064 |
| 11 | 01/01/21 – 12/31/21 | $3,556,620 |
| 12 | 01/01/22 – 12/31/22 | $5,828,485 |

All in violation of Title 18, United States Code, Section 666.

## COUNTS 13 – 17
### Theft and Embezzlement Concerning Programs Receiving Federal Funds
### [18 U.S.C. § 666]

31.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

32.     On the dates set forth below, in the District of Arizona, the defendants, Kevin McKenzie and Corina Martinez, did commit and aid and abet in the commission of the following acts.  Defendant McKenzie, being an agent of an organization, to wit: ABHS, said organization receiving in the one year period beginning and ending as set forth below as to each count, benefits in excess of $10,000 under a Federal program involving a grant, contract, and other form of Federal assistance, defendants stole, embezzled, obtained by fraud, without authority and knowingly converted to the use of a person not the rightful owner, property worth at least $5,000 and owned and under the care, custody, and control of such organization, ABHS, in the amounts as set forth below as to each count:

| Count | Calendar Year | Money Embezzled/Obtained Through Fraud |
|---|---|---|
| 13 | 01/01/18 – 12/31/18 | $3,688,592 |
| 14 | 01/01/19 – 12/31/19 | $3,906,232 |
| 15 | 01/01/20 – 12/31/20 | $1,075,432 |
| 16 | 01/01/21 – 12/31/21 | $2,513,325 |
| 17 | 01/01/22 – 12/31/22 | $3,493,963 |

All in violation of Title 18, United States Code, Sections 666 and 2.

### COUNTS 18 - 20
### Wire Fraud
### [18 U.S.C. § 1343]

33.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

34.     Beginning in September 2015 and continuing through at least April 2023, in the District of Arizona, the defendant, Kevin McKenzie with the intent to defraud, knowingly participated in, devised, and intended to devise, a scheme and artifice to defraud, and a scheme and artifice to obtain money by the intentional concealment of material facts.  Examples of some of the interstate wire transmissions that occurred in furtherance of the scheme are set forth below:

### Execution of the Scheme by Wire Communication

35.     On or about the dates listed below, within the District of Arizona, and elsewhere, defendant, for the purpose of and as an essential part of executing the scheme to defraud, transmitted, and knowingly caused to be transmitted by means of wire and electronic communication signals in interstate commerce, for the purpose of executing said scheme and artifice to defraud as set forth in each count below relating to each transaction:

| Count | Defendant | Date | Amount | Description |
|---|---|---|---|---|
| 18 | McKenzie | 9/11/2019 | $ 1,292,822.50 | ABHS ACH transfer to HEDY |

| 19 | McKenzie | 5/18/2022 | $ 659,958.50 | ABHS ACH transfer to HEDY |
| 20 | McKenzie | 2/14/2023 | $ 248,640.00 | ABHS ACH transfer to HEDY |

All in violation of Title 18, United States Code, Section 1343.

### COUNTS 21 - 23
### Wire Fraud
### [18 U.S.C. § 1343]

36.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

37.     Beginning in October 2017 and continuing through at least July 2023, in the District of Arizona, the defendants, Kevin McKenzie and Corina Martinez, with the intent to defraud, knowingly participated in, devised, and intended to devise, a scheme and artifice to defraud, and a scheme and artifice, to obtain money by means of materially false and fraudulent representations, promises, and the intentional concealment of material facts. Examples of some of the interstate wire transmissions that occurred in furtherance of the scheme are set forth below:

### Execution of the Scheme by Wire Communication

38.     On or about the dates listed below, within the District of Arizona, and elsewhere, defendants, for the purpose of and as an essential part of executing the scheme to defraud, transmitted, and knowingly caused to be transmitted by means of wire and electronic communication signals in interstate commerce, for the purpose of executing said scheme and artifice to defraud as set forth in each count below relating to each transaction:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 21 | McKenzie Martinez | 9/11/2019 | $ 1,207,474.08 | ABHS ACH transfer to EHI |
| 22 | McKenzie Martinez | 5/18/2022 | $ 349,986.77 | ABHS ACH transfer to EHI |
| 23 | McKenzie Martinez | 2/14/2023 | $ 111,895.37 | ABHS ACH transfer to EHI |

All in violation of Title 18, United States Code, Section 1343.

1

2

## COUNT 24
### Conspiracy to Commit Wire Fraud
### [18 U.S.C. § 1349]

3

4

39.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

5

6

7

8

9

10

11

40.     From a time unknown, but at least from October 2017 and continuing thereafter through at least April, 2023, in the District of Arizona, and elsewhere, Kevin McKenzie, and Corina Martinez, knowingly and intentionally combined, conspired, and agreed with each other to knowingly execute and attempt to execute a scheme and artifice to defraud, and a scheme and plan to obtain money by means of material false and fraudulent representations and promises and the intentional concealment of material facts, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

12

### Manner/Means of the Conspiracy/Scheme to Defraud

13

14

15

16

17

18

19

20

21

22

23

24

25

41.     The co-conspirators engaged in a scheme to defraud ABHS and the White Mountain Apache Tribe as described in paragraphs 1-23 of the indictment. In furtherance of the fraud scheme, the co-conspirators entered phony "referral services" contracts with ABHS which caused the transfer of millions of dollars of funds to other businesses owned and controlled by the co-conspirators. The sham contracts purported to be a "referral" "professional services contracts." However, the contracted company (Evolved LLC) did not perform any legitimate services for ABHS. The fraudulent contracts caused individuals in the ABHS management to believe that Evolved LLC was compensated under the contracts for providing counseling services for ABHS patients. In fact, the counseling was completed by ABHS employees, and no employees were referred by either Evolved LLC or EHI to ABHS. The phony "referral" agreements were merely used as a front by defendants McKenzie and Martinez to funnel and fraudulently obtain money from ABHS for which the defendants were not lawfully entitled.

26

27

28

1    42.    As an essential part of the scheme to defraud, and in furtherance of the

2    conspiracy, the co-conspirators knowingly caused to be used at least one or more wire

3    communications that traveled in interstate commerce.

4         All in violation of Title 18, United States Code, Section 1349.

5                                     **COUNT 25**
6                     **Conspiracy to Commit Money Laundering**
7                              **[18 U.S.C. § 1956(h)]**

8         43.    The factual allegations alleged in paragraphs 1-23 above are re-alleged and

9    incorporated below.

10        44.    From at least March 2018, through on or about February 2023, in the District

11   of Arizona, and elsewhere, Kevin McKenzie and Corina Martinez, knowingly and

12   intentionally combined, conspired, and agreed with each other, to commit an offense

13   against the United States, to wit: knowingly conduct and attempt to conduct financial

14   transactions involving property that represented the proceeds of Theft and Embezzlement

15   from Programs Receiving Federal Funds, and Wire Fraud in violation of Title 18, United

16   States Code, Sections 666 and 1343, knowing that the property represented the proceeds

17   of some form of illegal activity, and knowing that the transactions were designed in whole

18   or in part to conceal and disguise the nature, location, source, ownership and control of the

19   proceeds of specified unlawful activity.

20        45.    The defendants entered a conspiracy to receive proceeds derived from the

21   embezzled and fraudulently obtained funds from ABHS.  The defendants entered the

22   conspiracy to launder portions of the embezzled and fraudulent proceeds, that is to disguise

23   the nature, location, source, ownership, and control of such fraudulent and embezzled

24   proceeds through various financial transactions defendants conducted and knowingly

25   caused to be conducted.

26        All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and Title

27   18, United States Code, Section 1956(h).

*United States of America v. Kevin McKenzie and Corina Martinez*
*Indictment Page 17 of 22*

**COUNTS 26 - 39**
**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**
**[18 U.S.C. § 1957]**

46.     The factual allegations alleged in paragraphs 1-23 above are re-alleged and incorporated below.

47.     From a time unknown, but at least from 2018 through on or about July 2023, in the District of Arizona, and elsewhere, Kevin McKenzie and Corina Martinez knowingly engaged in a monetary transaction having occurred in the United States and in and affecting interstate commerce, of funds and a monetary instrument by, through and to a financial institution, knowing that the transaction involved criminally derived property of a value greater than $10,000, such property having been derived from the specified unlawful activities: Theft from a Program Receiving Federal Funds, and Wire Fraud, in violation of Title 18, United States Code, Sections 666 and 1343 as set forth below:

| Count | Defendant | On or About | Amount | Transaction |
|-------|-----------|-------------|--------|-------------|
| 26 | Martinez | 3/12/2018 | $283,416.91 | Cashier's Check from D2K payable to Fidelity National Title for the purchase of a home: 2974 S. Open Range Way, Tucson, AZ. |
| 27 | Martinez McKenzie | 4/2/2018 | $128,539.50 | Wire from Martinez's personal account to Metrolina Auto Group for a 2013 Rolls Royce Ghost |
| 28 | McKenzie | 7/26/2018 | $106,541.41 | Check from D2K payable to Jim Click Ford for a 2018 Lincoln Navigator |
| 29 | McKenzie | 8/3/2018 | $27,813.10 | Check from D2K payable to Chapman Volkswagen for a 2019 Volkswagen Jetta |
| 30 | Martinez | 9/18/2018 | $30,000.00 | Cashier's Check from Martinez's personal account payable to Larry H Miller for a 2018 Jeep Wrangler Unlimited |
| 31 | McKenzie | 11/23/2018 | $28,375.00 | Wire from D2K's Wells Fargo account to Sahara Jets for private flight(s) |

| 32 | Martinez McKenzie | 1/4/2019 | $951,974.01 | Cashier's Check from Martinez's personal account to Fidelity National Title for the purchase of a home: 1567 N. Saguaro Cliffs, Tucson, AZ. |
| 33 | Martinez McKenzie | 8/5/2019 | $10,050.00 | Check from Martinez's Bank of America account payable to Specter Kitchen for "McKenzie's Cabinets" |
| 34 | McKenzie | 10/25/2019 | $50,447.87 | Cashier's Check from D2K payable to Jim Click Ford. |
| 35 | Martinez | 4/21/2020 | $90,254.12 | Cashier's Check from Martinez's personal account payable to Title Security Agency for the purchase of a home: 10212 E. Bell Rock Trail, Tucson, Az. |
| 36 | McKenzie | 5/26/2022 | $44,000.00 | Cashier's Check from D2K's Wells Fargo account payable to Pavon and Busch for a 2008 Volvo VNL670 |
| 37 | Martinez McKenzie | 8/11/2022 | $58,621.39 | Cashier's Check from Martinez's Bank of America account to Desert Trailer Systems for a 2018 Utility 53' Dry Van Trailer |
| 38 | McKenzie | 3/20/2023 | $1,000,000.00 | Transfer from D2K's Wells Fargo account to McStephens Transportation |
| 39 | McKenzie | 7/21/2023 | $92,255.58 | Transfer from WF account ending in 1614 to Premier Title Agency for the purchase of land at 11700 W. Sinagua Rd, Tucson, AZ. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 40
### Attempted Tampering with a Witness
### [18 U.S.C. § 1512(b)(1)]

48.    The factual allegations in paragraphs 1-23 are realleged and incorporated below.

49.    On or about April 16, 2023, in the District of Arizona, the defendant, Kevin McKenzie, did knowingly attempt to corruptly persuade S.G. to lie to investigators with

the intent to influence the testimony of S.G. in an official proceeding, that is the Grand Jury investigation conducted in this matter in the District of Arizona, in violation of Title 18, United States Code, Section 1512(b)(1).

### **FORFEITURE ALLEGATION**

50.     Upon conviction of the offenses in violation of Title 18, United States Code, Section 666 set forth in Counts 8-17 of this Indictment, the defendants, Kevin McKenzie and Corina Martinez, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

51.     Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 18-23 of this Indictment, the defendants, Kevin McKenzie and Corina Martinez, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

52.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set forth in Count 24 of this Indictment, defendants, Kevin McKenzie and Corina Martinez, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

53.     Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1956(h) and 1957 set forth in Counts 25-39 of this Indictment, defendants, Kevin McKenzie, and Corina Martinez, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all right, title, and interest in any property, real or personal, involved in such offense, or property traceable to such property.

54.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1512(b)(1) set forth in Count 40 of this Indictment, defendant, Kevin McKenzie, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

55.    The property to be forfeited includes, but is not limited to:

a.  A sum of money equal to the proceeds traceable to the offense or the amount involved in such offense.

b.  The real property located at 1567 N. Saguaro Cliffs Court, Tucson, Arizona 85745, with any and all improvements, fixtures and appurtenances attached thereto and thereon, with Pima County Parcel ID 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.

c.  The real property located at 2974 S. Open Range Way, Tucson, Arizona 85713, with any and all improvements, fixtures and appurtenances attached thereto and thereon, with Pima County Parcel ID 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.

d.  The real property located at 10212 E. Bell Rock Trail, Tucson, Arizona 85747, with any and all improvements, fixtures and appurtenances attached thereto and thereon, with Pima County Parcel ID 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.

e.  The real property located at 11700 W. Sinagua Road, Tucson, Arizona 85743, with any and all improvements, fixtures and appurtenances attached thereto and thereon, with Pima County Parcel ID 211-06-006H.

f.  One 1966 Ford Galaxie 500 XL, VIN: 6G69Y115216;

g.  One 2013 Rolls Royce Ghost, VIN: SCA664S58DUX51670;

h.  One 2018 Jeep Wrangler Unlimited, VIN: 1C4HJXFG7JW292421;

i.   One 2018 Land Rover Range Rover, VIN: SALYB2RV5JA728974;

j.   One 2018 Utility 400 DX, Dry Van Trailer, VIN:
     1UYVS2536J7492719; and

k.   One 2021 Cadillac Escalade, VIN: 1GYS4CKL8MR239507.

56.   If any of the property described above, as a result of any act or omission of the defendants: a) cannot be located upon the exercise of due diligence; b) has been transferred or sold to, or deposited with, a third party; c) has been placed beyond the jurisdiction of the court; d) has been substantially diminished in value; or e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and  Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including, but not limited to, all property, both real and personal, owned by the defendants.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 982(b)(1), Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
FOREPERSON OF THE GRAND JURY
Dated: December 14, 2023

GARY M. RESTAINO
United States Attorney
District of Arizona

REDACTED FOR
PUBLIC DISCLOSURE

s/
VINCENT J. SOTTOSANTI
JONATHAN B. GRANOFF
Assistant U.S. Attorneys

*United States of America v. Kevin McKenzie and Corina Martinez*
*Indictment Page 22 of 22*